**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janis Wolf, | No. CV-20-00957-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Carpenter Hazlewood Delgado & Bolen LLP, | |
| Defendant. | |

Several motions, including cross-motions for summary judgment, pend before the Court in this matter; however, they all stand or fall on the resolution of two questions: (1) whether a particular homeowner association ("HOA") assessment is a voluntary "credit transaction" under the Fair Credit Reporting Act ("FRCA"), and if so, (2) was there a "direct link" between that transaction and obtaining Plaintiff Janis Wolf's credit report. For the following reasons, the Court answers both questions in the affirmative and therefore grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

**I. Facts**

The facts are undisputed. Plaintiff became interested in purchasing a home in the Neely Farms subdivision. (Doc. 58-1 at 4-5.) Before she purchased it, she learned it was located within a HOA, which imposed an assessment under the Neely Farms HOA's Covenants, Conditions, and Restrictions ("CC&Rs"). Under the CC&Rs, which Plaintiff read "from cover to cover" (Doc. 58-1 at 6), the assessment is imposed on an annual basis,

with homeowners paying the full amount in installments throughout the year (Doc. 58-3 at 9).

But in 2017, she stopped making those payments. The Neely Farms HOA hired Defendant Carpenter Hazlewood Delgado & Bolen, a law firm, to collect the unpaid assessments. (Doc. 58-1 at 4.) Before filing a lawsuit to collect the unpaid HOA assessment, Defendant obtained Plaintiff's credit report—without her consent—in September 2019 to learn Plaintiff's current address.[1] (Doc. 58-7 at 30.) Carpenter justifies this practice because "many debtors do not reside in the homes subject to the HOA assessments being collected, and because debtors often have common or similar names." (Doc. 58-6 at 6.)

Upon learning that Defendant had obtained her credit report, Plaintiff sued it under the Fair Credit Reporting Act. (Doc. 1.) She then filed a motion for class certification, which is fully briefed. (Docs. 21, 43, 48.) Both Plaintiff and Defendant have filed motions for summary judgment, which are also fully briefed. (Docs. 58, 62, 68, 71, 74, 75.) Also pending are a handful of motions for leave to file supplemental briefing related to Plaintiff's motions for class certification and summary judgment. (Docs. 52, 76, 78.)

**II. Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

---

[1] Plaintiff contends that Defendant also obtained her credit report in October 2019. Defendant acknowledges that it received a bill for a credit inquiry on Plaintiff in October 2019, but Defendant argues that it obtained Plaintiff's credit report for the same reason as the first report: to obtain her current address as part of its ordinary procedures in collecting a debt. (Doc. 58 at 8 n. 5.) Plaintiff does not dispute this.

and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).

**III. Discussion**

The FRCA allows a third party to obtain a consumer's credit report without that consumer's consent under certain circumstances, including if it intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer. 15 U.S.C. § 1681b. Courts have also required that there be a "direct link" between the credit transaction and the collector's request for the credit reports. *See, e.g.*, *Baron v. Kirkorsky*, No. CV-17-01118-PHX-DGC, 2017 WL 4573614, at *3 (D. Ariz. Oct. 13, 2017).

**A. Credit Transaction**

The definition of "credit transaction" under the FCRA is one of first impression. But the FRCA and the Equal Credit Opportunity Act ("ECOA") use the same definition of credit: "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. §§ 1681a(r)(5); 1691a(d). And the Ninth Circuit, interpreting the ECOA's definition of credit, explained that the hallmark of a "credit transaction" is a transaction in which payment is deferred. *Brothers v. First Leasing*, 724 F.2d 789, 792, 792 n.8 (9th Cir.

1984). Thus, the Court will apply the *Brothers* characterization of "credit transaction."[2] Still, deferred payment on its own is not enough; the transaction must also be voluntary to qualify as a credit transaction. *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010); *Baron*, 2017 WL 4573614, at *3.

### 1. Deferred Payment

The undisputed facts show that the HOA annual assessment was structured to provide for deferred payment. The HOA assessment is set on a yearly basis, and homeowners pay that assessment in installments throughout the year.[3] This is exactly like the consumer lease in *Brothers* where "[u]nder the terms of the lease that [Lessee] applied for, [Lessee] would have had to pay a total amount of $16,280.16. Payment of that debt would have been deferred, and [Lessee] would have been required to make 48 monthly installment payments of $339.17." *Brothers*, 724 F.2d at 794. The *Brothers* court determined that such a transaction was a credit transaction; so too here. *Id.*

Plaintiff presents several unpersuasive counterarguments. First, Plaintiff argues that "[t]he obligation to pay does not exist until the assessment is billed and becomes due; nothing is deferred." (Doc. 68 at 6.) But this misstates the record. The assessment is imposed on an annual basis, triggering the obligation to pay, and allowing payment in installments thereafter

Second, Plaintiff contends that neither the HOA nor Defendant are creditors within the meaning of the FCRA. (Doc. 68 at 2-3.) But, under the Agreement, the HOA determines the assessment amount for a full year and then makes it payable in installments over the course of the year. Thus, it regularly extends credit.[4]

---

[2] Plaintiff urges the Court to accord deference to a later official commentary by the Board of Governors of the Federal Reserve Systems that chided the *Brothers* court for interpreting "credit" too broadly. (Doc. 68.) But *Brothers* remains the law in the Ninth Circuit.

[3] It is unclear whether members pay monthly—following the CC&R—or quarterly—following the HOA bylaws. (Docs. 58-3, 58-4.) The fact remains, however, that the annual assessment is due in installments.

[4] Plaintiff also directs the Court to the deposition testimony of one of Defendant's corporate representatives for the proposition that "the clients the firm represents in collections matters do not regularly extend credit to potential defendants" and are thus not creditors. (Doc. 62 at 3.) But that characterization of the deposition testimony bears little resemblance to the testimony itself, where the deponent says, "The delinquency we are

Finally, Plaintiff's reliance on *Ollie v. Waypoint Homes, Inc.*, 104 F. Supp. 3d 1012, 1014 (N.D. Cal. 2015) is misplaced. *Ollie* asked whether a residential lease was a credit transaction, and so that court declined to apply *Brothers*, which concerned a commercial lease.[5] Here, an HOA is not a residential lease, rather it is a consumer transaction under the CPA. *See Thies v. L. Offs. of William A. Wyman*, 969 F. Supp. 604, 607 (S.D. Cal. 1997). Thus, *Brothers*, which concerned a consumer transaction, guides the analysis here.

### 2. Voluntariness

"Debt collection is a permissible reason for obtaining a credit report only insofar as the debt arose from a transaction in which the debtor voluntarily and directly sought credit." *Baron*, 2017 WL 4573614, at *3; *accord Pintos*, 605 F.3d at 675. As relevant here, Arizona law is clear that a home buyer who accepts a deed containing restrictions, he or she "assents to these restrictions and is bound to their performance as effectively as if [he or she] had executed an instrument containing them." *Heritage Heights Home Owners Ass'n v. Esser*, 565 P.2d 207, 210 (Ariz. Ct. App. 1977).

The facts are not in dispute. Plaintiff liked the home's size, price, and location. (Doc. 58-1 at 5.) "Right before signing the papers to own the home," she read the CC&Rs "from cover to cover." (Doc. 58-1 at 6.) She admitted she knew that the property was located in an HOA, and that as a homeowner there she would have to pay annual assessments to the HOA. (Doc. 58-1 at 6.) Knowing all of this, Plaintiff decided to buy the property, and she concedes that nobody forced her to buy it. (Doc. 58-1 at 5.) Thus, the undisputed facts all show that Plaintiff acted of her own accord, with full knowledge of her obligations to the HOA if she purchased the property.

Plaintiff argues "[w]hen consumers like Plaintiff buy property in an HOA, they have no choice but to become bound by the HOA's common recorded deed restrictions (*i.e.*, trying to collect is unpaid homeowner assessments." (Doc. 62-5 at 5:20-21.) Plaintiff's interpretation of this testimony does not create a dispute in fact; neither does it entitle her to judgment as a matter of law.

[5] The *Ollie* court also emphasized that the residential lease lacked a "grace period" after rent became due. 104 F. Supp. 3d at 1014. By contrast, the HOA allows a fifteen-day grace period for unpaid assessments. (Doc. 58-4 at 11.) That means that a homeowner could defer payment of the assessment for fifteen days after it became due and still receive services with no penalty.

CC&Rs)." And that's true. But Plaintiff could have decided not to purchase the home in the first place. She instead chose to buy the home, knowing full well that a purchase would obligate her to pay annual assessments to the HOA in which the home was located. Plaintiff's home purchase bears no resemblance to the transactions that courts have deemed involuntary. *Pintos*, 605 F.3d at 675 (fees from a police-initiated towing for a car with expired registration); *Baron*, 2017 WL 4573614, at *3 (judgment for court costs).

### B. Direct Link

Merely identifying a credit transaction is not enough. There must be a "direct link" between the credit transaction and the collector's request for a credit report. *Id.* It is undisputed that Defendant "obtained Plaintiff's credit report to confirm her whereabouts before filing [a] justice court action against her in November 2019" to collect the outstanding debt. (Doc. 58 at 13.) Defendant has established the requisite "direct link."

## IV. Conclusion

Defendant's motion for summary judgment is granted, which moots Plaintiff's motions for class certification and summary judgment, as well as all motions for leave to submit supplemental briefing. Therefore,

**IT IS ORDERED** as follows:

1. Defendant's motion for summary judgment (Doc. 58) is **GRANTED**.
2. Plaintiff's motion for class certification (Doc. 21) is **DENIED**.
3. Plaintiff's motion for summary judgment (Doc. 62) is **DENIED**.
4. All motions for leave to file supplementary briefing (Docs. 52, 76, 78) are **DENIED**.
5. The clerk of the Court is directed to enter judgment accordingly and terminate this case.

Dated this 18th day of January, 2022.

Douglas L. Rayes
United States District Judge